Case 1:13-cv-01850-CL   Document 26   Filed 08/26/15   Page 1 of 12

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

AARON TRENT STEELE,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

    Defendant.

Civ. No. 1:13-cv-01850-CL

**ORDER**

MARK D. CLARKE, Magistrate Judge.

Plaintiff Aaron "Trent" Steele ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Supplemental Security Income under section 1614(a)(3)(A) of the Social Security Act. For the reasons below, the Commissioner's decision is REVERSED and REMANDED for further proceedings.

## BACKGROUND

Plaintiff was born October 10, 1989. Since early childhood, Plaintiff has experienced difficulties stemming from attention deficit hyperactivity disorder, social phobia, and borderline intellectual disorder. On October 10, 2008, Plaintiff protectively filed an application for Supplemental Security Income benefits, alleging disability beginning October 10, 2008. The

claim was initially denied on February 9, 2010, and denied upon reconsideration on August 18, 2010. Thereafter, Plaintiff filed a request for a hearing on September 16, 2010. The hearing was held before an Administrative Law Judge ("ALJ") on January 9, 2012, and the ALJ issued his unfavorable decision on March 27, 2012. On August 14, 2014 the Appeals Council denied Plaintiff's request for review, making the ALJ's denial the Commissioner's final decision. This appeal timely followed.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii);

    416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.  Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.  Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.  Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

  The claimant bears the burden of proof at steps one through four. *Id.* at 953. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R.

§§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

### THE ALJ'S FINDINGS

Applying the five-step analysis, the ALJ found:

1. Plaintiff had not engaged in substantial gainful activity since October 10, 2008, the application date.

2. Plaintiff has the following medically determinable impairments: attention deficit hyperactivity disorder ("ADHD") (Exhibits 3F/7; 8F/7); borderline intellectual functioning (Ex. 3F/7); a history as a sexual abuse perpetrator (*id.*); Asthma (*see*, e.g., Ex. 6F/7); hypothyroidism (*see* Ex. 6F/22); obesity (*see* Exhibits 6F/6; 13 F/3); and beginning December 30, 2010, social phobia, a severe combination of impairments. (ALJ's Decision, pp. 3 & 4).

3. Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Pt. 404, Subpt. P, App. 1.

4. Plaintiff has no past relevant work (20 CFR 416.965).

5. Based on the Plaintiff's age, education, work experience and residual functional capacity (as found by the ALJ, and detailed on page six of his Decision), there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (20 CFR 416.969 and 416.969 (a)).

Therefore, the ALJ concluded Plaintiff was not disabled, as defined by the Social Security Act.

### STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r,* 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala,* 53 F.3d 1035, 1039 (9th Cir. 1995)). It means

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this court may not substitute its judgment for that of the Commissioner. *Burch v. Barnhart,* 400 F.3d 676, 679 (9th Cir. 2005). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff argues the ALJ erred by: (1) not considering the fact that "Plaintiff had been receiving SSI (disability) for 16 years until he was placed in juvenile detention," and there had been no change in Plaintiff's condition or his capacity for work since that time, (2) failing to develop the record where the medical evidence was sufficiently ambiguous based on the severity of Plaintiff's claimed mental impairments, (3) failing to give proper weight to the opinions and conclusions of Plaintiff's treating mental health specialist, Ms. Heilman, (4) substituting his own

opinion for that of Plaintiff's treating and examining medical sources, (5) giving the vocational expert an incomplete hypothetical and disregarding the answer given when the complete hypothetical was posed by Plaintiff's counsel.

### I. ALJ did not fail to consider Plaintiff's previous SSI eligibility.

Plaintiff withdraws this claim in his Reply Brief (#23), and therefore this claim is denied as moot.

### II. ALJ failed to develop the record of plaintiff's mental impairments.

The ALJ has an affirmative duty to ensure the adequate development of the record. *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir.2003). The duty fully and fairly to develop the record ensures that the claimant's interests are considered, even when the claimant is represented by counsel. *Smolen v. Chater*, 80 F.3d 1273, 1283 (9th Cir.1996). The ALJ's duty to develop the record fully is "heightened where the claimant may be mentally ill and thus unable to protect [his or] her own interests." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.2001). The responsibility to develop the record "rests with the ALJ in part because disability hearings are inquisitorial rather than adversarial in nature." *Loeks v. Astrue*, 2011 WL 198146 (D.Or. Jan. 18, 2011) (citing *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000)).

The duty to develop the record is not triggered in the event of a silent record that does not support disability. *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir.1998). The ALJ's duty to develop the record is triggered only by "ambiguous evidence or when the record is inadequate for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir.2001); see also SSR 96–7P, available at 1996 WL 374186, at *2 n. 3 (July 2, 1996) ("The adjudicator must develop evidence regarding the possibility of a medically determinable mental impairment when the record contains information to suggest that such an

Page 6 – ORDER

impairment exists."). Where the duty to develop the record is triggered, such supplementation can include subpoenaing physicians, submitting questions to the physicians, continuing the hearing, or keeping the record open after the hearing to allow the record to be supplemented. *Tonapetyan*, 242 F.3d at 1150. The ALJ may also order a consultative examination in certain circumstances. 20 C.F.R. §§ 404.1519a, 416.919a.

Here, the ALJ noted several medical professionals who discussed Plaintiff's various mental impairments, including a prior examining psychologist who found a probable personality disorder with dependent traits, and a more recent examining psychologist who found Plaintiff exhibited dependent, passive-aggressive, and anti-social and immature traits. Tr. 21. Even though these reports were consistent with each other, and with the record as a whole, the ALJ determined that because neither doctor made a conclusive diagnosis, Plaintiff failed to establish a personality disorder as medically determinable. There is also evidence to suggest Plaintiff may have been previously diagnosed with Asperger's syndrome. Ms. Heilman, Plaintiff's nurse practitioner, notes that Plaintiff's mother "reports that client was diagnosed with ADHD and Asperger's Disorder while in residential treatment." Tr. 584. This was signed-off on by a Ph.D. psychologist a month later, Tr. 580, and the nurse practitioner made an unequivocal diagnosis of Asperger's disorder in her MRFC assessment. Tr. 574. However, the ALJ dismisses this potential diagnosis because it "is based on the 'client report of history.'" Tr. 21. The ALJ's duty to develop the record was also heightened in this case due to the Plaintiff's mental impairments, which even the ALJ determined were severe. Though the ALJ is not required to accept the diagnosis of Ms. Heilman, there is sufficient evidence to suggest that Plaintiff had a pre-existing diagnosis of Asperger's disorder and may suffer from a personality disorder. Because the record here was not silent and was sufficiently ambiguous and inadequate to trigger the ALJ's duty, the

Page 7 – ORDER

ALJ's failure to further develop the record to obtain a conclusive diagnosis for both impairments was an error.

### III. ALJ did not properly reject the opinion of Mental Health Professional Ms. Heilman.

In order to reject the testimony of a medically acceptable treating source, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record. *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009). However, nurse practitioners are defined as "other sources," not acceptable medical sources, and can only speak to the severity of existing impairments. CFR 404.1513(d); *see also Crysler v. Astrue*, 563 F.Supp.2d 418, 434-45 (N.D.N.Y. 2008) (a nurse practitioner's "observations regarding the effects of the medical condition which has, without contradiction, been diagnosed by acceptable medical sources, is evidence which can inform the ALJ's RFC determination"). As "other sources," they are also entitled to lesser deference. 20 C.F.R. § 404.1513(d); *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The ALJ need only give germane reasons to discount Ms. Heilman's opinion. *Molina*, 674 F.3d at 1111.

The ALJ rejected Ms. Heilman's opinion regarding the Plaintiff's mental capacity for work because she relied on a condition (Asperger's) which the ALJ found the Plaintiff failed to establish as medically determinable. Tr. 26. Specifically, he found that the diagnosis of Asperger's syndrome is based on the "client report of history." Tr. 21. Though Ms. Heilman also included Plaintiff's conditions of social phobia and ADHD in her assessment, it is not clear which of Plaintiff's limitations can be attributed to which conditions. Thus, had the ALJ sufficiently developed the record and still found Asperger's disorder was not a medically determinable impairment, his reasoning may have been sufficient to discount Ms. Heilman's opinion. However, as noted above, the ALJ did not fully develop the record on this point. It was

Page 8 – ORDER

an error for the ALJ to discount Ms. Heilman's opinion as to the severity of Plaintiff's conditions without first adequately assessing whether or not Asperger's was a medically determinable impairment.

## IV. The ALJ did not substitute his own opinion for that of Plaintiff's treating and examining medical sources

Though often afforded less weight than treating physicians, the opinions of examining and reviewing physicians also carry weight in the ALJ's disability analysis. *Lester v. Chater,* 81 F.3d 821, 830 (9th. Cir. 1995). To reject the opinion of an uncontradicted examining acceptable medical source, the ALJ must provide clear and convincing reasons. *Widmark v. Barnhart,* 454 F. 3d 1063, 1066 (9th Cir. 2006). Even an acceptable medical opinion that is contradicted by another doctor "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester,* 81 F.3d at 830-31 (citations and internal quotations omitted). In analyzing the medical evidence, an ALJ may not substitute his own judgment for that of a physician. *Ratto v. Secretary, Dep't of Health and Human Services,* 839 F.Supp.1415, 1427 (D.Or. 1993) (citing *Fergueson v. Schweiker,* 765 F.2d 31, 37 (3d Cir. 1985) (holding the ALJ erred by substituting his interpretation of laboratory reports for that of a physician).

Plaintiff claims that the ALJ improperly substituted his own opinion for that of Plaintiff's medical providers. (#16). Though the ALJ improperly discredited the testimony of Ms. Heilman, he credited the opinions of the other examining and reviewing providers. Tr. 26. The ALJ relied on the consistent findings between their reports and the longitudinal record in attributing great weight to these opinions. Tr. 26. On its face, giving such weight to both the reviewing physicians and the examining physicians suggests the ALJ did not substitute his opinion for that of Plaintiff's providers. The consistency between the ALJ's residual functional capacity and the limitations prescribed by these physicians further emphasize this point. The only potentially

Page 9 – ORDER

speculative finding the ALJ makes relates to Plaintiff's capacity to interact with other people. Specifically, he interprets "interpersonal trouble at the work place" resulting from Plaintiff's "sexual preoccupations" as suggesting he have limited contact with the public and children but not coworkers. Tr. 26. However, further development of the record and a reassessment of Ms. Heilman's opinion in light of that record may shed new light on these opinions. Once the ALJ has sufficiently dealt with the ambiguities presented in this record by Plaintiff's potential impairments of Asperger's syndrome and a personality disorder, these opinions should be reassessed in light of the record as a whole.

## V. The ALJ erred by basing his opinion on a hypothetical that may not have reflected all of Plaintiff's limitations.

If a claimant is unable to prove that their medical conditions meet a listing, they can still show they are disabled if they are unable to do their past relevant work. *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002). The burden then "shifts to the Commissioner to establish that the claimant can perform a significant number of other jobs in the national economy" through the testimony of a vocational expert. *Id.* A vocational expert's testimony must "identify a specific job or jobs in that national economy having the requirements that the claimant's physical and mental abilities and vocational qualifications would satisfy." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162-63 (9th Cir. 2001). The hypothetical that the ALJ provides to the vocational expert to asses whether the claimant is able to work must be "based on medical assumptions supported by substantial evidence in the record that reflects each of the claimant's limitations." *Id.* at 1163-64 (9th Cir. 2001) (quoting *Roberts v. Shalala,* 66 F.3d 179, 184 (9th Cir. 1995).

At the hearing, the ALJ presented two hypotheticals to the vocational expert. Tr. 71-74. First, the vocational expert testified that an individual suffering from the limitations set forth by Ms. Heilman could not preform any jobs that exist in the national economy. Tr. 72. Then, the

Page 10 – ORDER

expert testified that an individual without the limitations in Ms. Heilman's assessment would be able to work. Tr. 73-74. Because the ALJ rejected Ms. Heilman's opinion, he based his findings on the testimony of the vocational expert as to the second hypothetical. However, because Ms. Heilman's opinion, which would have resulted in a finding of disability, was not properly rejected nor the record adequately developed, the second hypothetical may not have accurately reflected each of claimant's limitations. Upon remand, the ALJ should further develop the record as to Plaintiff's mental impairments and present a hypothetical that reflects all Plaintiff's limitations based on that record.

## REMAND

"The decision whether to remand a case for additional evidence or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)). Generally, when a court reverses an administrative decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke*, 379 F.3d at 595 (quoting *INS v. Ventura*, 537 U.S. 12, 16 (2002)). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989); *Smolen*, 80 F.3d at 1292.

In some circumstances, where the ALJ has improperly credited testimony or failed to consider it, the Ninth Circuit has credited the rejected testimony. *See Smolen*, 80 F.3d at 1292; *see also Lester*, 81 F.3d at 834. However, in *Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003), the Ninth Circuit determined that the "crediting as true" doctrine is not mandatory and the court has some flexibility in applying the doctrine. On this record, the Court exercises its

Page 11 – ORDER

discretion and remands for further proceedings. *See Stout v. Commissioner, Soc. Sec. Admin.*, 454 F.3d 1050, 1053–54, 1056–57; *Connett*, 340 F.3d at 876.

## ORDER

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is REVERSED and the matter is REMANDED for further administrative proceedings. The ALJ should:

(1) Fully develop the record as to whether Plaintiff has the medically determinable impairments of Asperger's disorder and a personality disorder.

(2) Reassess Ms. Heilman's opinion as to Plaintiff's limitations in light of whether Plaintiff suffers from Asperger's disorder or a personality disorder.

(3) Reassess the medical opinion evidence in light of the record as a whole once it has been adequately developed.

(4) Present the vocational expert with a hypothetical reflecting a residual functional capacity that includes all of Plaintiff's limitations once ambiguities in Plaintiff's medically determinable impairments have been resolved.

(2) Make a determination concerning plaintiff's disability application, after conducting the analysis outlined above.

DATED this 26 day of August 2015.

MARK D. CLARKE
United States Magistrate Judge